UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LESTER EUGENE FISHER,

       Plaintiff,

vs.                               Case No. 3:22-cv-698-MMH-JBT

CAPTAIN RHODEN, et al.,

       Defendants.

_____

## ORDER

## I. Status

Plaintiff Lester Eugene Fisher, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on June 21, 2022, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) with exhibits (Doc. 1-1).[1] In the Complaint, Fisher asserts claims pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Captain Rhoden, Suwannee Correctional Institution (SCI); (2) Sgt. King, SCI; and (3) Sgt. Folsom, SCI. Fisher alleges that Defendants Rhoden and King violated his Fourteenth Amendment right to due process and equal protection of law, his Fifth Amendment right to due process of law, and his Eighth Amendment right to be free from cruel and

---

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

unusual punishment. Fisher alleges Defendant Folsom violated his Fifth Amendment right to due process of law. Specifically Fisher asserts that Defendants Rhoden, King, and Folsom violated his right to due process and equal protection of the law by: (1) using profane and abusive (racist) language; (2) using unnecessary and excessive force (although he later clarifies that only Defendants King and Rhoden violated his Eighth Amendment right by using excessive force); (3) leaving Fisher handcuffed in a room full of unrestrained prisoners; (4) maliciously denying him food; and (5) using hand restraints as punishment. Fisher also alleges Defendants King, Rhoden, and Folsom subjected him to cruel and unusual punishment in violation of the Eighth Amendment by denying him food. Finally, he asserts Defendants King, Rhoden, and Folsom violated his right to due process in their failure to stop and report the abuse, as required by FDOC policy. As relief, he seeks monetary damages.

This matter is before the Court on Defendants Folsom, King, and Rhoden's Motion to Dismiss Plaintiff's Complaint (Motion; Doc. 16). The Court advised Fisher that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 5). Fisher filed a response in opposition to the Motion. See Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss (Response; Doc. 19).

## II. Plaintiff's Allegations[2]

As to the specific underlying facts supporting his claims, Fisher, an African American inmate, asserts that on February 14, 2022, at approximately 6:00 a.m., he entered the dining hall at SCI for breakfast. Complaint at 6. After getting a breakfast tray, he proceeded to the first row of tables as inmates are required to fill up all seats, in order. Id. Fisher observed liquid in the seat and moved his tray to the next available seat, at the next table. Id. Defendants Rhoden, King, and Folsom were standing near the entrance of the dining hall, along with three or four other corrections officers. Id. Captain Rhoden yelled at Fisher to sit down. Id. Fisher responded the seat is wet. Id. Using irate and profane language, Captain Rhoden yelled at Fisher to come over. Id. Fisher asked Captain Rhoden why he was cussing. Id. Captain Rhoden responded with profane language and said, "I don't like your tone of voice, boy – you must not know who I am." Id. at 7. Captain Rhoden ordered Sgt. King to handcuff Fisher, so Fisher who already had his back to Sgt. King, put his hands behind his back, offering no resistance to being handcuffed. Id. Nevertheless, Sgt. King shoved Fisher in his upper back, forcing Fisher's face into the wall. Id. Sgt.

---

[2] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Fisher, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

King roughly kicked Fisher's feet apart while muttering a racial slur, and tightly handcuffed Fisher. Id.

Captain Rhoden kept Fisher facing the wall, while handcuffed, throughout the entire meal period. Id. According to Fisher, white guards stood around laughing and taunting him, and Captain Rhoden told Fisher, who is 62 years old, to "face that wall, boy." Id. While Fisher was facing the wall, Captain Rhoden turned to Sgt. Folsom and said: "[f]lip a coin. Heads he goes to jail [confinement], tails he doesn't eat." Id. Sgt. Folsom flipped the coin, indicated it was heads, and said he would flip the coin again, trying two out of three. Id.

After the dining hall was empty, Captain Rhoden ordered Sgt. King to remove the handcuffs and told Fisher to get out of there. Id. Fisher's tray was gone. Id. at 7-8. Fisher asked Captain Rhoden if he could eat. Id. at 8. Using racially charged words, Captain Rhoden told Fisher he was lucky he was in a good mood or Fisher would be in the box [confinement]. Id. Fisher departed the dining hall amidst the laughter of Captain Rhoden and his subordinates. Id. Fisher alleges he sought psychological counseling on several occasions due to psychological trauma caused by this incident. Id.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see

also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of

5

the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give a court license to serve as <u>de</u> <u>facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Campbell v. Air Jamaica Ltd.</u>, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting <u>GJR Invs., Inc. v. Cnty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 709).

### IV. Summary of the Arguments

In their Motion, Defendants argue that Fisher's Complaint should be dismissed because: (1) he failed to exhaust his administrative remedies; (2) the Complaint does not include a short and plain statement of the facts as required by Rule 8(a)(2) of the Federal Rules of Civil Procedure (Rule(s)) and does not have numbered paragraphs as required by Rule 10(b); (3) he has not pled facts sufficient to state an Eighth Amendment claim; (4) to the extent he is

attempting to raise a substantive due process claim, his claim should be addressed under the Eighth Amendment and the due process claim dismissed; (5) he fails to state an equal protection claim upon which relief can be granted; (6) he fails to state a Fourteenth Amendment claim upon which relief can be granted; (7) the Defendants are entitled to qualified immunity; and (8) he is not entitled to any damages because he alleges only <u>de minimis</u> physical injuries which do not entitle him to compensatory and punitive damages under 42 U.S.C. § 1997e(e). Motion at 4-39.

In his Response, Fisher asks the Court to deny Defendants' Motion because he states plausible claims against Defendants. Response at 1-2, 5-7. He also contends that he exhausted his administrative remedies. <u>Id.</u> at 2-5. He submits that as a pro se litigant he should not be held to the same exacting standards as an attorney and any failure to comply with Rules 8(a)(2) and 10(b) should be excused. Response at 5. Finally, he contends much of Defendants' argument is inapplicable to his Complaint as he does not raise a claim of deliberate indifference. <u>Id.</u> at 6.

## V. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278,

1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab.
Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[3] (noting that exhaustion is "a
'threshold matter' that we address before considering the merits of the case")
(citation omitted). It is well settled that the Prison Litigation Reform Act
(PLRA) requires an inmate wishing to challenge prison conditions to first
exhaust all available administrative remedies before asserting any claim
under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S.
516, 524 (2002). A prisoner such as Fisher, however, is not required to plead
exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United
States Supreme Court has recognized that "failure to exhaust is an affirmative
defense under the PLRA[.]" Id. Notably, exhaustion of available administrative
remedies is "a precondition to an adjudication on the merits" and is mandatory
under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not
only is there an exhaustion requirement, the PLRA "requires proper
exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal
> with parties who do not want to exhaust,
> administrative law creates an incentive for these
> parties to do what they would otherwise prefer not to
> do, namely, to give the agency a fair and full

---

[3] The Court does not rely on unpublished opinions as binding precedent;
however, they may be cited in this Order when the Court finds them persuasive on a
particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022);
see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not
considered binding precedent, but they may be cited as persuasive authority.").

> opportunity to adjudicate their claims. Administrative
> law does this by requiring proper exhaustion of
> administrative remedies, which "means using all steps
> that the agency holds out, and doing so <u>properly</u> (so
> that the agency addresses the issues on the merits)."
> <u>Pozo</u>,[4] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendants bear "the burden of proving that [Fisher] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082. In accordance with

---

[4] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, Defendants submitted grievance records as exhibits to their Motion.[5] See

---

[5] Fisher submitted the same grievances, except those concerning his emergency grievance (#22-6-05232). See exhibits to the Complaint (Doc. 1-1).

10

Doc. 16-1. When neither party requests an evidentiary hearing, courts may decide a motion to dismiss on the basis of affidavits and other documents. Bryant, 530 F.3d at 1377 n.16. The parties have not requested an evidentiary hearing. Thus, the Court considers the grievance records solely for purposes of addressing their competing contentions regarding exhaustion. In evaluating whether Fisher has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

## B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is

11

not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if,

12

following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint;" is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to;" is "not written legibly and cannot be clearly understood;" is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable;" or does not include the required attachments. <u>See</u> Fla. Admin. Code R. 33-103.014(1).

## C. The Parties' Positions Regarding Exhaustion

According to Defendants, Fisher failed to exhaust his administrative remedies as to certain of his claims. Motion at 4. Specifically Defendants contend Fisher did not properly exhaust his administrative remedies regarding the allegations that, "(1) Defendants were using profanity and abusive (racist) language towards him, (2) using unnecessary and excessive use of force (i.e., being handcuffed too tightly), (3) leaving Plaintiff handcuffed in a room full of unrestrained inmates, (4) was denied food, and (5) using hand restraints as punishment." <u>Id.</u> at 12-13 (footnote omitted).

13

Defendants attach the informal grievance that Fisher submitted to the Assistant Warden on February 14, 2022 to the Motion. Doc. 16-1 (informal grievance, #231-2202-0142). The informal grievance states:

> The following incident is entirely on camera. On 2-14-22 at approximately 6:00AM during the morning meal in the East dining hall, I retrieved my tray and sat it on the table.  Seeing water on the seat I moved my tray to another table.  Captain Rhodes [sic] saw me and told me to sit down. I informed him that the seat was wet. Captain Rhodes [sic] yelled out, "Bring your f*** ass here." When I reached Captain Rhodes [sic] he stated, "who the f*** you think you talking to?". He said he did not like my "tone of voice." He ordered Sgt. King . . . to cuff me up. Sgt. King pushed me against the wall, kicked my feet apart and tightly handcuffed me. Cameras will verify that I was in no way resisting. Captain Rhodes [sic] kept me handcuffed facing the wall throughout the entire meal, as if he had me on display. When the dining hall finally emptied Captain Rhodes [sic] uncuffed me and made me leave the dining hall without eating. These actions constitute cruel and unusual punishment and abuse of the elderly, as I am 62 years old. Captain Rhodes [sic] actions violates D.O.C. policies in; 1. Using profane and abusive language towards me, in violation of F.A.C. 33-208. 2. Leaving me handcuffed in a room full of unrestrained inmates, thus endangering my life. 3. Denying me food, which constitutes cruel and unusual punishment.
>
> I request the cameras be reviewed and this matter referred to the I.G. Office for investigation and sanctions against Captain Rhodes [sic]. I further request that no reprisals be taken against me for this complaint.

> Because this institution suppresses complaints against staff, a copy of this grievance is being forwarded to Regional Director John Palmer.
>
> This incident shall result in litigation.

Id. at 1-2. On February 22, 2022, Captain Rhoden responded: "I acted in a professional manner.  Inmate Fisher decided on his own accord to return to the dorm without eating." Id. at 1.

According to Defendants, Fisher only raised three matters against Captain Rhoden and Sgt. King: the use of abusive and racist language, leaving Fisher handcuffed in a room full of unrestrained inmates, and denying Fisher food. Motion at 13. Defendants contend Fisher failed to raise any claims against Sgt. Folsom in the informal grievance. Id.

Defendants also attach to the Motion Fisher's emergency grievance to the Secretary of the FDOC, dated February 14, 2022:

> This is an emergency grievance concerning inmate abuse.  This incident is entirely on camera.
>
> On 2-14-22 at approximately 6:00AM in the East dining hall I got my tray and proceeded to sit down. The seat was wet and I moved to another seat. Captain Rhoden yelled for me to sit down and I replied that the seat was wet. Captain Rhoden yelled, "Bring your f*** ass here." When I approached Captain Rhodes [sic] I asked him why was he cussing me like that. Captain Rhodes [sic] replied that he didn't like my "tone of voice." He ordered Sgt. King to handcuff me and ordered me to face the wall. Captain Rhodes [sic] kept me handcuffed facing the wall for the entire meal. When the dining hall emptied Captain Rhodes [sic]

unhandcuffed me, stated "You're lucky I'm in a good mood. Get the f*** out of here." He would not allow me to eat. This constitutes cruel and unusual punishment.

Captain Rhodes [sic] is in violation of D.OC. policy in; 1) Using profane and abusive language . . . towards me, in violation of F.A.C. 33-208. 2) Violating security protocols in leaving me handcuffed in a room full of unhandcuffed inmates, thus endangering my life. 3) Denying me food.

I request this matter be investigated. It is all on camera. I further request a transfer, as I am being mistreated and abused at this facility. I fear reprisals (confinement, bogus D.R.s, etc.) as a result of my complaints.

These abusive actions shall result in litigation.

Doc. 16-1 (emergency grievance, #22-6-05232) at 3-4.

On February 21, 2022, A. Johns responded:

Note: This grievance is not accepted as a grievance of an emergency nature.

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure. The rule requires that you first submit your appeal at the appropriate level at the institution. You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

The Colonel should be given the opportunity to respond to your issue.

Upon receipt of this response, if you are within the allowable time frames for processing a grievance, you may resubmit your grievance at your current location

> in compliance with Chapter 33-103, Inmate Grievance
> Procedure.
>
> Based on the foregoing information, your grievance is
> returned without action.

Id. at 5.

According to Defendants, Fisher only raised three matters against Captain Rhoden and Sgt. King through the emergency grievance: the use of abusive and racist language, leaving Fisher handcuffed in a room full of unrestrained inmates, and denying Fisher food. Motion at 13. Defendants contend Fisher failed to raise any claims against Sgt. Folsom in the emergency grievance. Id. at 13-14. Also, Defendants argue that as this grievance was returned without action, all claims raised are unexhausted as to all three Defendants. Id. at 14.

Defendants also provide the Court with Fisher's Request for Administrative Remedy or Appeal, dated February 25, 2022, and addressed to the Warden:

> In further appeal of **grievance log #231-2202-
> 0142**; This administration is in violation of the
> established grievance process in that I addressed my
> grievance to the Assistant Warden and requested an
> investigation. Instead, my grievance was forwarded to
> Captain Rhoden, the subject of my complaint, who
> provided a completely false and self-serving response.
> This is improper.
>
> The Respondent, Captain Rhoden, is guilty of
> falsifying documents, in violation of F.A.C. 33-208.

17

This incident is entirely on camera.

     1. Captain Rhoden said he acted in a professional manner. Handcuffing me and leaving me in a room full of unrestrained inmates is not professional. In fact, it is against Departmental policy. Cameras will verify Captain Rhoden's unprofessionalism in this regard.

     2. Captain Rhoden stated that I decided on my own accord to return to the dorm without eating. Cameras will reveal this to be an outright lie. Cameras (and inmate witnesses) will reveal that I sat my tray on the table prior to Captain Rhoden calling me and handcuffing me. Captain Rhoden kept me handcuffed facing the wall throughout the entire meal[.] Other inmates presumably ate my tray, as when I was released from handcuffs, the tray was no longer on the table. Nor would Captain Rhoden allow me to get another tray.

     3. Cameras will reveal several officers standing around laughing and taunting me as I stood facing the wall. Cameras will reveal Sgt. Folsom flipping a coin and Capt. Rhoden telling him, "Heads he goes to jail. Tails he doesn't eat." He denied me food maliciously.

     Again, this response is a complete falsification of documents.

     Again, I request this matter be forwarded to the I.G. Office for review of the cameras and an investigation.

     I further request that Captain Rhoden and his subordinates be prohibited from retaliating against me for this complaint.

Doc. 16-1 (request for administrative remedy or appeal, #2203-231-014) at 6-7

(emphasis added).

On March 10, 2022, M. Stofel, Grievance Officer, along with the Acting

Warden, responded:

> Your request for Administrative Remedy or Appeal
> has been received, reviewed & evaluated.
>
> Further investigation reveals the following
> information:
> The issue of your complaint has been documented and
> forwarded to the Office of the Inspector General for
> investigation and disposition. Upon completion of
> necessary action, information will be provided to
> appropriate administrators for final determination
> and handling. This may or may not result in a personal
> interview with you. While action has been initiated
> and your allegations have been documented, this does
> not constitute substantiation of your allegations.
>
> Therefore, based on the foregoing information; your
> grievance is APPROVED.

Id. at 8.

According to Defendants, Fisher's formal grievance, #2203-231-014,

raised for the first time several matters against Defendants Rhoden and

Folsom: documents had been falsified, Fisher was left handcuffed in a room of

unrestrained inmates, he did not return without eating on his own accord, and

officers flipped a coin to render a decision regarding confinement. Motion at

14. Defendants contend Fisher did not raise any claims against Sgt. King. Id.

After discussing Fisher's attempts at exhaustion, Defendants argue that

Fisher did not exhaust his administrative remedies for any of the Defendants,

Defendants contend Fisher abandoned many of the issues during his attempt

to exhaust administrative remedies, and he failed to properly file a grievance appeal through the grievance procedure, thereby failing to properly exhaust administrative remedies.  Id. at 15. Defendants also contend that Plaintiff failed to properly file a grievance appeal through the grievance procedure, as described by Rule 33-103.007. Motion at 15.

More particularly, Defendants contend, in the informal grievance Fisher raised the issues of Defendants use of profanity and abusive (racist) language, the act of leaving Fisher restrained in a room full of unrestrained inmates, and the denial of food against just Defendants Rhoden and King. Id. They next argue that in his formal grievance, Fisher raised the issues of being restrained in a room full of unrestrained inmates and the denial of food against Defendants Rhoden and Folsom. Id. Thus, Defendants argue that Fisher abandoned the claim concerning profanity and abusive language and utterly failed to exhaust the claims of the unnecessary use of force and the use of hand restraints as punishment. Id. at 15-16. Finally, Defendants argue that by only raising claims against Sgt. Folsom in the formal grievance, Fisher failed to properly exhaust any claims against Folsom. Id. at 16.

In response to Defendants' arguments, Fisher contends that he exhausted his administrative remedies by filing grievances, grievance log #231-2202-0142 and log #2203-231-014, followed by a grievance to Central

Office on March 28, 2022, for which he received no log number or response.[6] Response at 2. Fisher contends that once his grievance was approved, he faced no additional grievance requirements. Id. at 3. See Rule 33-103.007(7), providing that once a grievance is approved, if the inmate is dissatisfied with the response, he may re-file with the Office of the Secretary. Fisher argues that this Rule places no mandatory requirement to seek further relief once a grievance has been approved. Response at 3-4. According to Fisher, he properly complied with the grievance process, his successive grievances incorporated the facts and allegations of the previous grievance, a grievant is not required to parrot each allegation in successive steps of the grievance process, and Defendants were given fair notice of Fisher's complaints. Id. at 4.

### D. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Fisher's allegations. See Whatley, 802 F.3d at 1209. If Fisher's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. See id.

The Court now turns to the allegations in the parties' respective filings concerning Fisher's exhaustion efforts. Defendants assert that Fisher failed to

---

[6] Fisher did not attach a copy of the grievance to Central Office to his Complaint. Instead, he simply states that through his grievance to Central Office he inquired as to the status of the investigation. Response at 4.

exhaust administrative remedies for any of the Defendants by abandoning some issues, failing to properly take a grievance appeal, and failing to properly grieve his complaints. Motion at 13-16. Instead of appealing his informal grievance, Fisher filed an emergency grievance with the Secretary that was returned without action for failure to comply with procedural requirements. Id. at 14. Although Fisher filed a formal grievance, Defendants contend that he failed to properly file a grievance appeal through the grievance procedure, as described by Rule 33-103.007. Id. at 15. Therefore, Defendants contend that Fisher did not properly exhaust his administrative remedies because he failed to comply with the FDOC's grievance procedure.  Id.

Fisher responds that he filed grievances, one of which was approved, meaning no further action was required on his part to fully exhaust his administrative remedies in compliance with the grievance process. Response at 2-3. Accepting Fisher's view of the facts as true, the Court cannot dismiss the Complaint at the first step of the Turner analysis.

### E. Turner Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the Turner analysis. The parties primarily dispute whether Fisher exhausted all of his claims and whether he fully exhausted any claims because he did not file a

grievance appeal as described by Rule 33-103.007. See Motion at 15-16;
Response at 3-5.

The Court finds that Defendants have not met their burden of
establishing that Fisher failed to properly exhaust his administrative remedies
with regard to the claims addressed in the Motion (abusive language, excessive
force, leaving Fisher handcuffed in a room full of inmates, denial of food, and
the use of hand restraints as punishment). The grievance records submitted by
both Fisher and Defendants demonstrate that Fisher exhausted his
administrative remedies. Although Fisher mentions that a grievance to
Central Office was never logged and processed, it was not a required element
of the institutional grievance process.

Reliable evidence supports the conclusion that Fisher submitted a
relevant grievance about the February 14, 2022 incident at the institutional
level. (Doc. 16-1 at 1). When his grievance of an emergency nature was
returned without action as non-compliant with the rules of the FDOC, Fisher
took the step of appealing grievance #231-2202-0142 by filing a request for
administrative remedy or appeal. (Doc. 16-1 at 6-7). This grievance, log #2203-
231-014, produced a response, and the grievance officer approved the grievance
and notified Fisher that his complaint had been documented and forwarded to
the Inspector General for investigation and disposition. Id.

23

To the extent Defendants contend Fisher did not exhaust his administrative remedies because he failed to comply with the FDOC's grievance procedure in failing to properly appeal the denial of his informal grievance, Fisher responds that he properly exhausted his administrative remedies because the FDOC did not reject his formal grievance. Instead, the grievance officials approved the formal grievance and forwarded it to the Inspector General for investigation. The Eleventh Circuit has held that a prisoner exhausts his administrative remedies "when prison officials decide a procedurally flawed grievance on the merits . . . [and] district courts may not enforce a prison's procedural rule to find a lack of exhaustion after the prison itself declined to enforce the rule." Whatley, 802 F.3d at 1215. Here, Fisher's formal grievance was approved, and he received the relief he requested: referral of his complaints to the Inspector General for an investigation. Even assuming Fisher's formal grievance and appeal were "procedurally flawed," the FDOC approved Fisher's grievance and declined to enforce any procedural bar. The Court will not enforce the FDOC's procedural bar on its behalf. Therefore, Defendants' Motion is due to be denied as to any assertion that Fisher failed to properly exhaust administrative remedies.

Defendants also contend that Fisher failed to properly file an appeal as described by Rule 33-103.007. See Fla. Admin. Code R. 33-103.007. However, the record shows that Fisher's grievance was approved, not denied. Therefore,

24

Defendants' argument is baseless. Fisher's grievance was approved and referred to the Inspector General, and there is no requirement that Petitioner take an appeal from an approved grievance.

Defendants also assert that Fisher failed to properly exhaust his administrative remedies because he did not name particular corrections officials in each grievance. Fisher counters that he gave Defendants fair notice of his contentions through his grievances. As a prisoner need not name any particular defendant in a grievance to properly exhaust, Defendants' argument does not persuade the Court that Fisher failed to exhaust his claims. Parzyck, 627 F.3d at 1218.

The Court has reviewed and considered all of the grievances and grievance responses before the Court and Defendants have failed to meet their burden. Based on all reasonable inferences, Fisher has shown that he filed relevant grievances or fully exhausted his contentions through available administrative remedies in compliance with the procedural rules of the FDOC. The Court concludes that the Motion for failure to exhaust administrative remedies is due to be denied in this respect.

## VI. Fifth Amendment Claims

Fisher raises Fifth Amendment due process claims and equal protection claims against Defendants in his Complaint. Notably these Defendants Captain Rhoden, Sgt. King, and Sgt. Folsom are employees of the State of

Florida, not the federal government. As noted in <u>Allen v. Dixon</u>, No. 4:22-cv-148-WS/MJF, 2023 WL 2393794, at *4 (N.D. Fla. Jan. 31, 2023) (slip), <u>report and recommendation adopted by</u> 2023 WL 2391010 (N.D. Fla. Mar. 7, 2023), the Fifth Amendment applies to the United States, not the states:

> "Notably, the Fifth Amendment applies to the United States, its agencies, and its employees. <u>Dusenbery v. United States</u>, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States ... from depriving any person of property without 'due process of law.'"). The Fourteenth Amendment, on the other hand, applies to the states. <u>S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.</u>, 483 U.S. 522, 542 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State.").

Fisher also asserts his claims against these Defendants under the Fourteenth Amendment. As such, the Court will dismiss Fisher's Fifth Amendment claims against Defendants Rhoden, King, and Folsom sua sponte.

**VII. Short and Plain Statement & Numbered Paragraphs**

Defendants argue that Fisher's Complaint fails to present a short and plain statement showing he is entitled to relief and fails to state his claims in numbered paragraphs. Motion at 17-18. According to Defendants, the Complaint is excessively long, difficult to read and follow, and could be refined to shorten it and to include numbered paragraphs. <u>Id.</u> In response, Fisher argues that any failure to comply with Rule 8(a)(2) and Rule 10(b) of the Federal Rules of Civil Procedure should be excused as he is a pro se litigant

and should not be held to the same exacting standards as an attorney. Response at 5. Fisher also maintains that he adequately set forth his claims and allegations as "this Court apparently apprehends [sic] Plaintiff's claims." Id.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quotation marks and citation omitted). And, while pro se pleadings are liberally construed, they "must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis." Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015).

To the extent Defendants contend the Complaint does not comply with Rule 8(a)(2) because Fisher's Complaint is long and hard to follow, their argument is unavailing. Fisher utilized the Court's approved form for complaints concerning violations of civil rights (prisoner). See Local Rule 6.04(a) ("A pro se person in custody must use the standard form[.]"). The Complaint form consists of eleven pages, and Fisher adds only four pages to expound upon his claims and allegations. Although his claims are somewhat scattered throughout the body of the Complaint and mixed with his factual

basis, Defendants were able to parse the claims and adequately respond. <u>See generally</u> Complaint. Fisher did not use numbered paragraphs, but the form does not require numbered paragraphs. Notably, he referenced the section numbers, in compliance with the form. <u>Id.</u>

Considering the above, Fisher has set forth a short and plain statement of his entitlement to relief such that the Defendants have fair notice of the claims against them and the facts underlying those claims, even though Fisher did not use numbered paragraphs and attached some pages to the Complaint form. The Court thus will evaluate the sufficiency of the factual allegations as set forth in the Complaint. Accordingly, Defendants' Motion is due to be denied as to their contention that the Complaint fails to comply with Rules 8(a)(2) and 10(b).

## VIII. Due Process

Defendants next argue that Fisher's due process claim must be analyzed under the Eighth Amendment, not the Fourteenth Amendment. Motion at 26-27. Regardless, they contend that the due process claim is without merit. <u>Id.</u> at 27. In response, Fisher asserts that his due process claim speaks for itself in that he was punished without a hearing or an opportunity to contest the decision or appeal. Response at 6-7. Upon review, Fisher's argument is not persuasive as he did not raise that particular claim as a deprivation of due process of law in the Complaint. <u>See generally</u> Complaint.

The Eighth Amendment is applicable to the states through the Fourteenth Amendment, but the Eighth Amendment gives rise to claims challenging the excessive use of force in the prison context. As the Eighth Amendment serves as the primary source of protection for a convicted prisoner, Fisher's claims of cruel and unusual punishment will be addressed as Eighth Amendment claims as that Amendment's prohibition against cruel and unusual punishment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the unnecessary and wanton infliction of pain. Thomas v. Bryant, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations and quotations omitted). As such, Fisher's claim of the excessive use of force by prison officials will be addressed under the Eighth Amendment, the primary source of his protection while incarcerated in the state prison system, not the Fourteenth Amendment.

## IX. Excessive Force and Failure to Intervene

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when necessary "to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320 (1986). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991).

29

Accordingly, courts must balance concerns of an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. Ort, 813 F.2d at 321-22.

An inmate against whom force is used to restore order demonstrates an Eighth Amendment violation "only if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and sadistically for the very purpose of causing harm.'" Williams, 943 F.2d at 1575 (citation omitted). Just as not "every malevolent touch by a prison guard gives rise to a federal cause of action[,]" it follows that not every push or shove, even if later viewed as seemingly unnecessary, violates a prisoner's constitutional rights. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citation omitted).

Whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to staff and inmates, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. Whitley, 475 U.S. at 321. In considering the factors, courts should give a "'wide range of deference to prison officials acting to preserve discipline and security' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir.1990)). For example, using

30

an appropriate amount of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987) (inmate refused an order to enter his cell and some force used to gain compliance).  Notably, a lack of serious injury, while not dispositive, is relevant to the inquiry. Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (per curiam); Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 514 (11th Cir. 2013) (per curiam) (twisting of arm and pressing against wall "not of a sort [of the use of force] repugnant to the conscience of mankind") (quoting Hudson, 503 U.S. at 10 (quotation marks omitted)).

The Eleventh Circuit, in Sconiers v. Lockhart, 946 F.3d 1256 (11th Cir. 2020), reviewed the principles applicable to excessive force claims and instructed:

> The Eighth Amendment, among other things, prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. As the Supreme Court has explained, "the unnecessary and wanton infliction of pain" qualifies under the Eighth Amendment as proscribed "cruel and unusual punishment." Hudson v. McMillian, 503 U.S. 1, 5, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). Nevertheless, the Supreme Court has instructed that what rises to the level of an unnecessary and wanton infliction of pain" differs based on the type of Eighth Amendment violation alleged. Id.
>
> Since [the plaintiff] asserts excessive-force ... claims, "the core judicial inquiry" requires [the Court] to consider "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm." Wilkins, 559 U.S. at 37, 130 S. Ct. 1175 (citation and quotation marks omitted). This standard requires a prisoner to establish two elements – one subjective and one objective: the official must have both "acted with a sufficiently culpable state of mind" (the subjective element), and the conduct must have been "objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8, 112 S. Ct. 995 (cleaned up).

With respect to the subjective element, "to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002); see also Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).

As for the objective component of an excessive-force violation, it focuses on whether the official's actions were "harmful enough," Hudson, 503 U.S. at 8, 112 S. Ct. 995, or "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L.Ed.2d 271 (1991), to violate the Constitution. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins, 559 U.S. at 37, 130 S. Ct. 1175. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 37-38, 130 S. Ct. 1175. Instead, the Eighth Amendment prohibits force that offends "contemporary standards of decency," regardless of whether "significant injury is evident," though the extent of injury may shed light on the amount of force applied or "whether the use of force could plausibly have been thought necessary." Wilkins, 559 U.S. at 37, 130 S. Ct. 1175 (citation and internal quotation marks omitted).

32

Id. at 1265-66.

Separately, "the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection" when a prison official becomes "aware of a threat to an inmate's health and safety[.]" Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990). When prison officials are "deliberately indifferent to a known danger . . ., their failure to intervene offend[s] 'evolving standards of decency' [and] ris[es] to the level of a constitutional tort." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).

Defendants argue that by Fisher's own allegations, he was handcuffed and then uncuffed during the normal course of operations at a correctional institution. Motion at 21. Defendants contend that Fisher's allegations show he was not left alone in the dining hall, handcuffed and at the mercy of unrestrained inmates. Id. at 21-22. Defendants also argue that Fisher's own allegations show that guards were in the dining hall as Fisher alleges that other guards stood around during this incident and Captain Rhoden and Sgt. King were present even at the end of the dining session. Id. at 22. See Complaint at 6-8.  Last, Defendants contend that Fisher does not allege any physical injury and none of the standards have been met by Fisher's claims. Motion at 22.

In response, Fisher argues he was handcuffed without cause, roughly pushed against a wall, and had his legs kicked apart, even though he offered no resistance.  Response at 5. He contends Defendants used force when none was necessary. Id.

In the Complaint, Fisher alleges that inmates are required to fill up all dining hall seats in order, and he did not comply with that requirement because his designated seat was wet, and he moved to the next table. Id. at 6. Fisher alleges that Captain Rhoden told him to sit down, and Fisher did not comply with this directive, instead he responded the seat was wet. Id. At that point, Captain Rhoden called Fisher over, cursed at him, and directed that he be handcuffed. Id. at 6-7. Fisher asserts Sgt. King then shoved Fisher in the upper back, pushing Fisher's face into a wall, and kicked Fisher's feet apart and secured the handcuffs tightly. Id. at 7. Fisher alleges no physical injury as a result of this incident. Id. at 9.

Fisher's allegations fail to satisfy the objective element of an excessive force claim. Clemmons v. United States, No. 2:21-cv-9, 2022 WL 2812270, at *4 (S.D. Ga. June 9, 2022) (slip)), report and recommendation adopted by 2022 WL 2812311 (S.D. Ga. July 18, 2022) (slip). Based on his own allegations, Rhoden ordered him to be handcuffed after Fisher refused to comply with a direct order to sit down in his designated seat. In light of his refusal, some use of force was allowed and Fisher's allegations are insufficient to show that

Defendant used more than <u>de minimis</u> force in applying the handcuffs as Fisher suffered no physical injuries. The act of shoving an inmate roughly and jerking him around is not excessive force, particularly when the rough handling results in no injury. <u>Clemmons</u>, 2022 WL 2812270, at *4. In the Complaint, Fisher alleges no physical injury as a result of the use-of-force. <u>See generally</u> Complaint. Also, the act of handcuffing too tightly is simply not enough to constitute a constitutional violation. <u>See</u> <u>Sebastian v. Ortiz</u>, 918 F.3d 1301, 1312 (11th Cir. 2019) (noting only the most exceptional circumstances will permit an excessive force claim based on handcuffing); <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1446-47 (11th Cir. 1997) (being handcuffed too tightly and too long considered <u>de minimis</u> harm); <u>see also</u> <u>Jones v. City of Dothan, Ala.</u>, 121 F.3d 1456, 1458-60 (11th Cir. 1997) (slamming plaintiff against a wall, kicking his legs apart, and requiring the raising of hands above the head was unnecessary but minimum force); <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1556 (11th Cir. 1993) (pushing plaintiff against display case while handcuffed not plainly unlawful), <u>opinion modified by</u> 14 F.3d 583 (11th Cir. 1994).

Fisher's allegations also fail to satisfy the Eighth Amendment's subjective prong: whether the force was applied maliciously or sadistically. <u>Clemmons</u>, 2022 WL 2812270, at *5. Indeed,

> In determining whether malicious and sadistic intent existed, "a variety of factors are considered including: 'the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" <u>Skrtich</u>, 280 F.3d at 1300 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7–8, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992)). While wide-ranging deference is given to officers' choices when faced with a security risk, <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1374 (11th Cir. 1999), it is also well establish[ed] that officers cannot continue the use of force once the threat has passed or the prisoner is subdued. <u>See Skrtich</u>, 280 F.3d at 1303. Liability can also be imposed on prison guards present at the scene for failure to take reasonable steps to prevent excessive force by other guards. <u>Id.</u> at 1301.

<u>McReynolds v. Ala. Dep't of Youth Serv.</u>, 204 F. App'x 819, 822 (11th Cir. 2006).

As noted above, Fisher's allegations establish some need for the exercise of handcuffing as he refused to comply with an order, and the relationship between the need for force and the force applied cuts in favor of Defendants, as the only force applied was handcuffing, pushing him against the wall and kicking his legs apart. Although Fisher was handled roughly, he suffered no physical injury. "The lack of any injury to Plaintiff supports a finding that any use of force was <u>de minimis</u>." <u>Fenelus v. Newell</u>, No. 3:10-cv-245-J-32JRK, 2013 WL 3854463, at *7 (M.D. Fla. July 24, 2013) (report and recommendation adopted by the Court) (not reported in F.Supp.2d) (citing <u>Vicks v. Knight</u>, 380 F. App'x 847, 852 (11th Cir. 2010) (same)). Fisher may not have been a great

threat to staff and other inmates, but he admittedly refused to comply with an order, moved to a different table, and refused a direct order to sit down in his designated seat. Additionally, Fisher was not placed in danger. Based on his own allegations, there were other officers standing around during this incident, so he was not left open to attack by other inmates while restrained. Indeed, Fisher does not allege that he was approached by or threatened by any other inmate. Although Fisher complains he was subjected to verbal abuse and rough handling, there was some effort to temper the severity of the response as Fisher was uncuffed by the end of the dining period and the officers did not generate a disciplinary report for his refusal to obey an order.

As to any alleged verbal abuse (including threatening or demeaning comments) on the part of the Defendants, such allegations do not state a claim of federal constitutional dimension. Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (per curiam). To the extent Fisher alleges the Defendants belittled him, verbal taunts without more do not deprive an inmate of his federal constitutional rights. See Paylan v. Dirks, 847 F. App'x 595, 601 (11th Cir.) (citation omitted), cert. denied, 142 S. Ct. 228 (2021). As such, Defendants' Motion is due to be granted as to Fisher's verbal abuse claim against Defendants.

To the extent Fisher raises a failure-to-intervene claim against Defendants Rhoden and Folsom, the law is well-established that a corrections

officer has a duty to intervene when he witnesses a fellow officer's use of excessive force against an inmate and is in a position to intervene. See Helm v. Rainbow City, Ala., 989 F.3d 1265, 1272 (11th Cir. 2021) (citing Priester v. City of Riviera Beach, 208 F.3d 919, 924-27 (11th Cir. 2000)). "Of course, there also must be an underlying constitutional violation. Plainly, an officer cannot be liable for failing to stop or intervene when there was no constitutional violation being committed." Sebastian, 918 F.3d at 1312 (citations omitted). Here, Fisher's allegations fail to satisfy the Eighth Amendment's objective and subjective prongs, and he has failed to state a claim for which he is entitled to relief. Therefore, Defendants' motion to dismiss Fisher's Eighth Amendment excessive force claim is due to be granted.  Also, as any failure-to-intervene claim is "wholly dependent on the underlying excessive force claim[,]" it too is due to be dismissed as it necessarily turns on whether Sgt. King used excessive force in Defendants Captain Rhoden and Sgt. Folsom's presence. Id.

## X. Denial of a Meal

Fisher alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment because he was denied a meal. Complaint at 8; Response at 6. Defendants argue that Fisher's contention of a deprivation of a meal fails to state a plausible Eighth Amendment claim and the claim should be dismissed. Motion at 26. In Sylvestre v. Williams, No. 3:08cv488/LC/MD, 2009 WL 62650, at *2 (N.D. Fla. Jan. 8, 2009) (not reported

in F.Supp.2d), the district court found that the inmate failed to state a plausible Eighth Amendment claim as, "[u]nder no set of facts can the denial of one meal constitute a significant deprivation." See Turner v. Warden, GDCP, 650 F. App'x 695, 702 (11th Cir. 2016) (24-hour deprivation of food does not rise to the level of a cruel and unusual deprivation); Minnis v. Pittman, No. 3:15-cv-1200-J-39JRK, 2018 WL 3974112, at *11 (M.D. Fla. Aug. 20, 2018) (not reported in F. Supp.) (finding denial of breakfast for seven days, while providing lunch and dinner, does not objectively violate the Eighth Amendment). Here, Fisher fails to state a plausible Eighth Amendment claim by claiming he missed one meal on a single occasion. As such, Defendants' Motion will be granted as to this claim.[7]

## XI. Fourteenth Amendment - Equal Protection

Defendants argue that Fisher has failed to state a claim for an equal protection violation. Motion at 27-28. They submit that Fisher, in a conclusory fashion, claims his Fourteenth Amendment rights were violated without explanation or elaboration. Id. at 28 (citing Complaint at 3). More particularly, Defendants assert that Fisher raises an equal protection claim, "without any

---

[7] Defendants also contend that Fisher has not met the deliberate indifference standard as there is not an excessive risk to inmate health or safety in missing one meal unless the prison official is subjectively aware of a substantial risk of serious harm and disregards that risk. Motion at 23-24. Fisher responds that he has not alleged deliberate indifference against any of the Defendants. Response at 6. As Fisher is not pursuing a claim of deliberate indifference, no further analysis is necessary.

corroboration or factual assertions whatsoever as to <u>why</u> Plaintiff believes this to be true." Motion at 28. Of import, Defendants contend that Fisher has met none of the required elements to plead that he suffered a violation, asserting, at a minimum Fisher must demonstrate: (1) he was similarly situated to other prisoners who received more favorable treatment, and (2) the state engaged in invidious discrimination against Fisher based on his race, religion, national origin, or some other constitutionally protected basis. <u>Barnes v. Parker</u>, No. 2:14-cv-28-TMH, 2014 WL 3615812, at *5 (M.D. Ala. 2014) (not reported in F.Supp.3d) (setting forth the requirements for an Equal Protection claim). Challenging the support that Fisher provides for his equal protection claim, Defendants seek the dismissal of the claim. Motion at 28.

In his response, Fisher argues that he has alleged that SCI is a racist prison, the officers involved are notoriously racist, and the Defendants mistreatment of Fisher was racially motivated. Response at 7. Fisher further contends that he actually alleged that he was treated differently than other similarly situated inmates in the dining hall on February 14, 2022 in that he was physically restrained, subjected to unnecessary use of force, denied food, and subjected to racial slurs and taunting. <u>Id</u>.

In the Complaint Fisher attempts to assert claims that his constitutional right to equal protection of the law were violated. Complaint at 3. He alleges the February 14, 2022 incident was racially motivated. <u>Id.</u> at 6. He states:

40

> Suwannee Correctional Institution is a notoriously racist prison and is disproportionately staffed by white guards and officials, unrepresentative of the racial demographics of the surrounding communities. The defendants in this action, Captain Rhoden and Sgt. King, are well known as being notoriously racist, with disciplinary reports and use of force reports disproportionately against black prisoners.[8] Plaintiff in this action is African-American.

Id. As far as disparaging remarks and gestures, Fisher alleges that Captain Rhoden cursed at him and called him boy; Sgt. King and Captain Rhoden used racially derogatory terms, and unnamed white guards stood around laughing and taunting Fisher. Id. at 6-7. Fisher contends that Defendants deprived him of equal protection of the law by using profane and racist language, employing unnecessary and excessive force, leaving him restrained in a room full of prisoners, denying him food, and using hand restraints as punishment. Id. at 8.

In order to survive a motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), "the allegations must state a claim for relief that is plausible, not merely possible." Gill v. Judd, 941 F.3d 504, 511 (11th Cir. 2019). Although Fisher argues that he has been subjected to discriminatory treatment based on a constitutionally protected

---

8 Fisher did not receive a disciplinary report and there was no use-of-force report issued. Complaint at 8.

interest of race, nowhere in the Complaint does Fisher actually assert that he was similarly situated to other prisoners who received more favorable treatment. See generally Complaint.

The Equal Protection Clause of the Fourteenth Amendment provides that no State may "deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. It requires that States treat all similarly situated persons alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, to establish a claim cognizable under the Equal Protection Clause, a prisoner must demonstrate that "(1) he is similarly situated to other prisoners who received more favorable treatment[,] and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318-19 (11th Cir. 2006) (citing Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001); Damiano v. Fla. Parole and Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986)).

In the prisoner context, the law provides:

> "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216, 102 S. Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). "Prisoners are

42

protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001). In other words, a plaintiff must establish that a discriminatory intent motivated some disparate treatment. E & T Realty v. Strickland, 830 F.2d 1107, 1112 n. 5 (11th Cir.1987).

Jackson v. Fed. Bureau of Prisons, No. CV206-192, 2008 WL 577646, at *2 (S.D. Ga. Mar. 3, 2008) (not reported in F.Supp.2d).

As noted above, Defendants assert that Fisher has not claimed disparate treatment between Fisher and a similarly situated individual in that he has not alleged that a similarly situated inmate was treated differently. Here, Fisher has offered only conclusory allegations of disparate treatment and discriminatory intent, which are wholly insufficient to support an equal protection claim. Indeed, he has not alleged the existence of an identifiable similarly situated inmate who was treated more favorably. Martinez v. Warden, 848 F. App'x 864, 868 (11th Cir. 2021) (per curiam) ("a prisoner must demonstrate that he is similarly situated to other prisoners who received more favorable treatment"). See Sweet, 467 F.3d at 1319 (same). And, in order to be considered similarly situated, "comparators must be prima facie identical in

43

all relevant respects." <u>Martinez</u>, 848 F. App'x at 868 (citation omitted). Fisher has done neither.

Relying on conclusions alone to attempt to plead elements of an equal protection claim does not suffice. In view of the absence of supporting facts, Fisher has failed to state a plausible claim for a violation of his equal protection rights. Based on his own allegations, Fisher failed to comply with a rule to sit in his designated seat, moved to a different table, and then refused an officer's verbal order to return to his designated seat. Simply claiming everything the corrections officers did in response to this situation was racially motivated is insufficient to support a plausible claim for relief. He has not alleged that in a similar situation, another inmate was treated more favorably. Therefore, he has failed to state a plausible equal protection claim against the Defendants.

## XII. Fourteenth Amendment – Due Process

The Court previously addressed Fisher's claims of the excessive use of force and cruel and unusual punishment, verbal abuse, denial of a meal, and being endangered by being left restrained in a roomful of inmates. As such, the remaining claim to be addressed is Fisher's contention that all three Defendants violated his right to due process of law by not stopping and reporting the abuse, as required by FDOC policy. Complaint at 8. Relying on <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995), Defendants argue that Fisher has failed to state a plausible claim of denial of due process of law in that he

44

has not alleged an atypical and significant hardship in relation to the ordinary incidents of prison life. Motion at 29. They contend that the use of handcuffs is not an atypical and significant hardship. Id. In response, Fisher argues that he was punished with the use of physical restraints, without due process. Response at 6-7.

Here, Fisher alleges he was restrained in handcuffs during the course of a meal after he did not sit in his designated seat, moved to a different table, and did not comply with an order to sit down in his designated seat. Under these circumstances, his placement in restraints is "not sufficient to trigger constitutional due process protection." Adamson v. McNeil, No. 3:08cv231/RV/EMT, 2008 WL 5231869, at *2 (N.D. Fla. Dec. 12, 2008) (report and recommendation adopted by the court) (not reported in F.Supp.2d) (finding placement in disciplinary confinement for thirty days was not sufficient to trigger due process protection); Shaarbay v. Palm Beach Cnty. Jail, 350 F. App'x 359, 362 (11th Cir. 2009) (being handcuffed when outside of cell not significant departure from general prison conditions). Nor did the use of hand restraints trigger constitutional due process protection or the need to intervene or report.

Fisher simply alleges no facts supporting even an inference that he was subjected to conditions so severe that they imposed upon him a significant

hardship in comparison to the ordinary incidents of prison life. <u>See</u> <u>Sandin</u>, 515 U.S. at 484. As such, he fails to state a claim for deprivation of due process.

## XIII. Conclusion

Upon review of the record and the arguments of the parties, the Court finds that Fisher exhausted his administrative remedies before initiating this action. Nevertheless, his Complaint is due to be dismissed because he has failed to plead sufficient facts to state any plausible claim to relief.[9]

Accordingly, it is now

**ORDERED**:

1.    Defendants Folsom, King, and Rhoden's Motion to Dismiss Plaintiff's Complaint (Doc. 16) is **GRANTED** to the extent provided in the Order.

2.    Plaintiff Lester Eugene Fisher's Complaint (Doc. 1) is **dismissed without prejudice**.

---

[9] Because Fisher's Complaint is due to be dismissed based on his failure to state any plausible claim, the Court need not address Defendants' arguments regarding qualified immunity or Fisher's failure to state a claim for damages.

3.     The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of August, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

sa 8/9
c:
Lester Eugene Fisher
Counsel of Record